**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **GLENN LEE EDGMON,** | ) |
| Plaintiff, | ) Case No. SACV 16-00519 AJW |
| v. | ) |
| **NANCY A. BERRYHILL,** | ) **MEMORANDUM OF DECISION** |
| **Acting Commissioner of Social Security,** | ) |
| Defendant. | ) |

Plaintiff seeks reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are summarized in the Joint Stipulation. [See JS 2]. In a June 2, 2014 written hearing decision that constitutes defendant's final decision, the Administrative Law Judge ("ALJ") found that plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of light work. The ALJ determined that plaintiff could not perform his past relevant work, but that he could perform alternative jobs available in significant numbers in the local and national economy. [Administrative Record ("AR") 47-48]. Accordingly, the ALJ found that plaintiff was not disabled at any time from March 1, 2011,

his alleged onset date, through the date of the ALJ's decision. [AR 49].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (quoting Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Credibility finding**

Plaintiff contends that the ALJ made an inadequately supported negative credibility finding. [JS 3-7].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of his or her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear, and convincing reasons for rejecting a claimant's subjective complaints. Treichler v. Comm'r, Soc. Sec. Admin., 775 F.3d 1090,1102 (9th Cir. 2014); Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008). "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)

(enumerating the factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (same). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is "reasonable" and "is supported by substantial evidence," it it not the Court's role "to second-guess it," even if the ALJ's interpretation is not "the only reasonable one." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ discussed plaintiff's subjective complaints, including his hearing testimony and his self-prepared function reports, and articulated specific, clear, and convincing reasons based on substantial evidence for finding those complaints less than fully credible. Plaintiff testified that he injured his back in 2010. [AR 61]. He had surgery on his spine and his right knee in 2011. [AR 45]. Plaintiff also reported that he had shoulder surgery around 2008. [AR 65]. He said that he cannot sit longer than 45 minutes and cannot stand longer than an hour without experiencing low back pain. [AR 67-68]. He stated that he once was able to walk ten miles a day and now can walk about one mile, or for an hour at a time, before his knee hurts and he has to rest. [AR 70, 278]. He also indicated that he has numbness in his left arm and hand. [AR 68]. He claimed that he cannot lift weight over ten pounds. [AR 66]. Plaintiff has "terrible problems sleeping" and cannot sleep through the night. [AR 69]. He also has numbness in his toes and feet. [AR 69].

The ALJ found plaintiff's subjective testimony about his symptoms and pain less than fully credible. She concluded that plaintiff's allegations of totally disabling back and knee pain and numbness in his extremities were not substantiated by the objective medical evidence and by the evidence documenting plaintiff's response to treatment. [AR 45]. The ALJ reviewed the records from Orthopaedic Specialty Group, where plaintiff received treatment from his treating orthopedist, Jack Chen, M.D., and from Dr. Chen's certified physician's assistant, Mykeisha Q. Alzaatra, PA-C. [See AR 350-378]. Plaintiff underwent a discectomy and fusion of the surgical spine in July 2011. [AR 25, 377-378]. During follow-up visits later that month, plaintiff denied pain or discomfort other than tightness in his neck. He reported significant improvement after surgery and exhibited good range of movement in his neck. [AR 45, 360-361]. An October 2011 x-ray indicated that plaintiff's cervical spine was "fusing well from C5 to C6." [AR 359]. Plaintiff underwent a right total knee replacement in October 2011. [AR 379-404]. There is no

evidence of any surgical complications or post-surgical problems. During a February 2012 follow-up visit with PA Alzaatra, plaintiff complained of slight tightness and soreness on the left side of his neck and occasional numbness and tingling in his four left fingertips, but he displayed full strength in his upper extremities bilaterally and normal range of motion. [AR 45, 357]. Plaintiff was prescribed ibuprofen, a muscle relaxant, and a medicated patch for pain. [AR 357]. In April 2012, plaintiff reported that his pain had improved, but that he had left hand and wrist numbness that occurred more frequently in the morning and lasted about an hour. [AR 45, 356].

The next treatment reports in the record are dated May 2013 and July 2013. [AR 414-415]. Plaintiff presented to Lestonnac Free Clinic in May 2013 with a five- to six-week history of low back pain. [AR 415]. The clinic note states that plaintiff had walked two miles to the clinic. Plaintiff was diagnosed with low back strain and hypertension. Plaintiff was prescribed a muscle relaxant, and naprosyn, a nonsteroidal anti-inflammatory medication. He was advised to lose weight, eat a low-sodium diet, and increase his intake of fruits and vegetables. Plaintiff returned to the clinic in July 2013 complaining of severe lower back pain. No physical examination findings were recorded. His diagnoses were spinal stenosis with severe degenerative disc disease. [AR 45, 414-415]. The ALJ permissibly relied on the absence of objective evidence corroborating the alleged severity of plaintiff's subjective complaints as one factor supporting her credibility finding. See Bunnell, 947 F.2d at 343 (stating that the absence of medical findings corroborating the alleged severity of a claimant's subjective complaints is a permissible consideration but "is just one factor to be considered in evaluating the credibility of the testimony and complaints).

The ALJ also was permitted to factor into her credibility assessment the testimony of the medical expert, who reviewed plaintiff's medical records and opined that although plaintiff "has trouble with his spine and his right knee," he could perform a restricted range of light work.[1] [AR 46, 63-64]. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (stating that in assessing the credibility of a claimant's "excess pain" complaints, the ALJ may consider testimony from physicians concerning the nature, severity, and effect of the claimant's symptoms). In addition, the ALJ pointed to the paucity of treatment records post-dating plaintiff's last surgical follow-up visit in April 2012. [AR 45]. There was a

---

[1] Plaintiff does not challenge the ALJ's evaluation of the medical opinion evidence.

4

gap of more than a year between that date and his next treatment visits in May 2013 and July 2013, when plaintiff sought help for a relatively short history of lower back pain. There was no evidence of treatment after July 2013. Plaintiff testified that he did not have insurance or money to pay for additional treatment, and that he had been unable to afford the medication prescribed for his lower back pain in May 2013. [AR 70-71]. However, he also testified that "[n]obody told me to do any treatment" beyond the treatment documented in the record, and that he was not taking even over-the-counter medication. [AR 71-72]. Plaintiff explained that he did not take "[a] lot of over-the-counter medication or even . . . prescription[s] because I just don't like them. I don't like the way they make me feel." [AR 71, 73]. Viewing the record as a whole, the ALJ rationally inferred that plaintiff's very minimal treatment between April 2012 and the hearing date in February 2014 detracted from the credibility of his subjective complaints. See Bunnell, 947 F.2d at 346 (stating that the "unexplained, or inadequately explained failure to seek treatment or follow a prescribed course of treatment" is relevant in assessing the credibility of subjective testimony).

Since the ALJ's interpretation of the plaintiff's subjective testimony is reasonable and is supported by substantial evidence, the ALJ's credibility finding is legally sufficient.

**Lay witness testimony**

Plaintiff asserts that the ALJ erred in rejecting a third party function report completed by plaintiff's sister, Beverly Edgmon. [JS 7; AR 294-295].

While an ALJ must take into account lay witness testimony about a claimant's symptoms, the ALJ may discount that testimony by providing "reasons that are germane to each witness." Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). Germane reasons for rejecting a lay witness's testimony include inconsistencies between that testimony and the medical evidence, inconsistencies between that testimony and the claimant's presentation to treating physicians during the period at issue, and the claimant's failure to participate in prescribed treatment. See Greger, 464 F.3d at 971; Bayliss, 427 F.3d at 1218; Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Ms. Edgmon's statements were largely consistent with plaintiff's own subjective allegations. [AR 47; see JS 7]. Ms. Edgmon reported that she lives with plaintiff and noticed he has difficulty standing for more than a half hour, bending to dress himself, getting in and out of the shower, and sleeping. [AR 295]. She said that plaintiff spent his days watching television and using the computer. [AR 295]. Ms. Edgmon

also mentioned that plaintiff can do light household chores for thirty minutes twice a week, that he can go grocery shopping for an hour on a weekly basis, that he can prepare quick, simple meals like sandwiches and frozen meals, and that he can walk a mile before he experiences severe pain. [AR 296-207, 299].

The ALJ considered Ms. Edgmon's report along with plaintiff's written statements and testimony. The ALJ discounted Ms. Edgmon's testimony because: (1) it was inconsistent with the medical record as a whole; (2) she is not a licensed health care provider; (3) she is unfamiliar with the social security disability guidelines; and (4) she has an inherent bias as plaintiff's sister. [AR 47].

The last three reasons given by the ALJ are not germane because descriptions of family members in a position to observe a claimant's symptoms and daily activities are competent evidence and must be considered in determining how an impairment affects a claimant's ability to work. See 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (holding that the ALJ's rejection of the claimant's wife's testimony because she was an "interested party" and "never saw him at work" contradicts circuit law holding that "regardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition'") (quoting Dodrill, 12 F.3d at 918-919). Since, however, the ALJ permissibly discounted the alleged severity of plaintiff's subjective symptoms based on inconsistency with the objective medical evidence, the medical expert's testimony, and plaintiff's medical treatment history, those reasons were germane to Ms. Edgmon's testimony. See Valentine, 574 F.3d at 694 (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [his wife's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony"); cf. Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012) (holding that the ALJ's failure to discuss lay testimony from the claimant's family members was harmless error where that testimony did not describe limitations not already described in the claimant's testimony, which the ALJ "rejected based on well-supported, clear and convincing reasons").

**Residual functional capacity assessment**

Plaintiff contends that the ALJ's RFC finding is defective because it did not take into consideration plaintiff's subjective pain testimony, nor did it consider the impact of plaintiff's obesity on his ability to work. [JS 18].

Since the ALJ properly considered plaintiff's subjective pain testimony, plaintiff's challenge to the ALJ's RFC finding on that basis lacks merit.

In addition, the ALJ adequately evaluated the impact of plaintiff's obesity. The ALJ has a duty to determine the effect of a disability claimant's "obesity upon her other impairments, and its effect on her ability to work and general health," even where the claimant's obesity was not independently "severe" and was not explicitly alleged to be a "disabling factor." Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003) (reversing and remanding a determination that the claimant could perform light work for a "multiple impairment analysis that explicitly accounts for the direct and marginal effects of the plaintiff's obesity during the period in question and that culminates in reviewable, on-the-record findings"). In Celaya, the Ninth Circuit held that the ALJ erred in not inquiring into the "interactive effects" of the claimant's obesity and her severe impairments of hypertension and diabetes for the following three reasons:

> First, it was raised implicitly in [the claimant's] report of symptoms. Second, it was clear from the record that [her] obesity was at least close to the listing criterion, and was a condition that could exacerbate her reported illnesses. Third, in light of [the claimant's] pro se status, the ALJ's observation of [the claimant] and the information on the record should have alerted him to the need to develop the record in respect to her obesity.

Celaya, 332 F.3d at 1182.

After Celaya was decided, defendant deleted obesity from the listing of impairments, but instructed adjudicators to consider whether obesity, alone or combined with other impairments, causes or exacerbates a claimant's functional limitations. See 20 C.F.R. Part 404, Subpart P, Appendix 1, ¶¶ 1.00Q, 3.00I & 4.00I (directing adjudicators to "consider any additional and cumulative effects of obesity" because obesity is "a medically determinable impairment often associated with" musculoskeletal, respiratory or cardiovascular impairments that "can be a major cause of disability in individuals with obesity," and stating that the combined effects of obesity with other impairments may be greater than expected without obesity); SSR 02-1p, 2000 WL 628049, at *3, *5 (stating that obesity is "a risk factor that increases an individual's chances of developing impairments in most body systems" and "may increase the severity of coexisting or related impairments," and explaining that when there is evidence of obesity, adjudicators must consider and explain whether obesity, alone or interacting with other impairments, causes any physical or mental limitations).

Celaya is distinguishable. First, plaintiff was represented by counsel during the administrative hearing, while the claimant in Celaya was not. Second, unlike in Celaya, the ALJ did not ignore plaintiff's obesity; rather, she found that it was a severe impairment and considered its effects in crafting plaintiff's RFC. [See AR 39, 43-46]. Finally, in Celaya, the ALJ found that the claimant had severe diabetes and hypertension, both serious conditions whose association with obesity is well-recognized. See SSR 00-3p, 2000 WL 33952015, at *3 (stating that obesity increases the risk of developing diabetes and hypertension). In this case, however, plaintiff testified that he stopped working as a heavy equipment operator in March 2011 because he injured his lower back, and that he developed upper extremity symptoms after his back injury that led to a diagnosis of neck problems. Plaintiff also had osteoarthritis in his right knee that led to a right total knee replacement. [See AR 39, 61, 67-68]. Although obesity can complicate musculoskeletal impairments, see SSR 00-3p, 2000 WL 33952015, at *3, the ALJ adequately considered the combined functional effects of plaintiff's obesity and other impairments in finding him capable of a restricted range of light work. [See AR 39, 43-46]. See Burch, 400 F.3d at 684 (holding that the ALJ "adequately considered [the claimant's] obesity in his RFC determination" where the claimant "has not set forth, and there is no evidence in the record, of any functional limitations as a result of h[is] obesity that the ALJ failed to consider").

## Conclusion

For the foregoing reasons, defendant's decision is supported by substantial evidence and is free of legal error. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**

March 8, 2017

_____
ANDREW J. WISTRICH
United States Magistrate Judge